UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICHAEL ANTHONY LOPRESTI,  )
 )
     Plaintiff,  )
 )
     v.  )     No. 4:05CV1783 CDP
 )
MICHAEL J. ASTRUE,[1]  )
Commissioner of Social Security,  )
 )
     Defendant.  )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) for judicial review of the

Commissioner's final decision denying plaintiff Michael Anthony Lopresti's

application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§

401, *et seq.* and supplemental security income benefits under Title XVI of the Act,

42 U.S.C. §§ 1381 *et seq.*  Lopresti claims that he is disabled because of

degenerative disc disease and bad hips.  The Administrative Law Judge, however,

found that Lopresti was not disabled.  Lopresti filed additional medical evidence

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted for Commissioner Jo Anne B. Barnhart as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

in support of his claim with this Court. Because I find that the additional records are immaterial, filed late with no good cause, and not reasonably likely to change the decision of the Commissioner, I will not remand this case to the ALJ for consideration of this new evidence. I find that the decision denying benefits was supported by substantial evidence and therefore I will affirm.

## **Procedural History**

On April 21, 2004, Lopresti filed applications for a Period of Disability, Disability Insurance Benefits and Supplemental Security Income pursuant to Titles II and XVI of the Social Security Act. Lopresti alleged disability since March 15, 2001, based on medical conditions that included lower back pain, scoliosis, hypoglycemia, headaches, fatigue, and sleeping problems. The application was denied initially.[2] Lopresti had a hearing before an ALJ on January 27, 2005, at which he was represented by counsel. The ALJ determined that Lopresti was not disabled in a decision issued June 21, 2005. On September 19, 2005, the Appeals Council denied Lopresti's request for review. Thus, the decision of the ALJ stands as the final determination of the Commissioner.

---

[2] Missouri is one of several test states participating in modifications of the disability determination procedures applicable to this case. See 20 C.F.R. §§ 404.906, 404.966, 416.1406, 416.1466 (2001). These modifications include the elimination of the reconsideration step and, in some cases, the Appeals Council review step in the administrative appeals process. See id. Therefore, plaintiff's appeal in this case proceeded directly from his initial denial to the ALJ level.

## Evidence Before the Administrative Law Judge

Lopresti was 42 years old at the time of the hearing. He is divorced and lives with his parents in their home. He has a drivers license with no restrictions. He has two minor children of whom he does not have custody but does have visitation. Lopresti has worked in the past as an airplane mechanic, tinner, and sheet metal worker.

Regarding education and training, Lopresti testified at the hearing that he did a workforce re-entry program in 1995 or 1996 that included training in automotive maintenance. He also completed two years of college learning aircraft repair. In 2002 and 2003, Lopresti participated in approximately 14 months of vocational rehabilitation training. He took a computer course that required up to 6 to 7 hours of class a day. He never completed the course. From January to June of 2004, Lopresti took college course work over the computer in computer technology.

Lopresti alleges disability since March 15, 2001. He stated that the last job he applied for was a part-time help desk job in 2001. Contrary to Lopresti's testimony, work history records before the ALJ indicate that Lopresti worked for a temp agency in 2003, after his alleged disability onset date. Lopresti also testified that he applied for unemployment benefits many times but the last time he could

recall applying was in 2001. The last time he received benefits was in October or November of 2001. Lopresti admitted that he knew applying for unemployment required a person to be ready and willing to work. He also testified to receiving food stamps.

Lopresti described the pain he has in his lower back, hips, thighs, and calves. He said that his left leg can often not support him and that he has headaches every 6 to 8 weeks that last anywhere from a few days to over two weeks. For the five to six months proceeding the hearing, he had been taking Oxycodone for pain and high blood pressure, and Perocet for headaches. He stated that the medications were not helping, but when asked why he kept taking them he admitted that they provide some relief. He is not on a special diet for his blood pressure problems.

Lopresti used a cane at the hearing. He stated that the cane had not been prescribed by any physician but that he needed it for stability and to keep the pressure off of his back. He said that he cannot squat, cannot pick up something off the floor without getting down on his knees, cannot crawl, and cannot climb stairs without assistance. He described his pain as constant but irritated more by long periods of sitting, standing, or walking. Lying down lessens the pain. He said that he only sleeps a couple of hours every night.

Lopresti reported a problem with dyslexia which he dealt with in college by using books on tape and tutors. He currently handles the problem by using a computer program that scans and reads written documents aloud.

Lopresti stated that he has been seeing a counselor twice a month for the last 6 to 8 months to treat depression and anger problems. He said that his sister urged him to start seeing the counselor after an incident where a car almost hit him and he did not care.

Lopresti testified that he was capable of walking about 50 to 100 feet, or about 2 city blocks, without his cane. He estimated that he could lift about 16 pounds with both hands, that he could stand about 20 minutes before needing to sit down, and that he could sit about 45 minutes before needing to stand up and move around. He smokes approximately a pack of cigarettes a day.

Lopresti testified that he spends most of his day in bed. He naps occasionally and watches television. He stated that he has no hobbies. About two to three times a week he spends two to three hours on the computer. His ex-wife drops off his two children every morning around 6 am. He prepares their breakfast and either he or his father takes them to school. He also has his kids on Wednesday evenings overnight and every other weekend. Other than breakfast for the kids, he does no cooking. He does help his parents with some housework and

he goes grocery shopping once or twice a month.  He occasionally attends his children's school activities.

## Medical Records

According to Lopresti, he was in a car accident on April 9, 1997, which caused posterior neck and low back pain.  Two weeks later he had cervical and lumbar spine x-rays done at St. Johns Mercy.  Three months later, on July 10, 1997, Lopresti visited Dr. Merenda because of persistent pain.  The doctor read the post-accident x-rays and found the results to be normal.  As for low back pain, Dr. Merenda found no tenderness, normal forward bending, and normal straight leg raises.  He did find that Lopresti's cervical spine motion was limited in the left and right rotation.  The neurological examination of his upper extremities was normal.  Dr. Merenda prescribed physical therapy.  Three months later at a follow-up visit, Lopresti reported that his neck pain was gone but that the lumbar spine was no better.  Lopresti had straight mid back pain and stiffness.  His back was tender at L5.  Dr. Merenda recommended continuing physical therapy and prescribed Naprosyn for the pain.  Five months later Lopresti visited Dr. Merenda again and reported persisting, non-radiating low back pain.  Lopresti commented on the heavy lifting he was required to do for work.  Dr. Merenda's exam found Lopresti's forward bend, straight leg raise, and reflexes normal.  He advised that

Lopresti continue his daily back exercises and return to see him if the pain continued.

Lopresti visited Dr. Thomas Greco on November 29, 2000, concerning low back pain. Dr. Greco recommended a referral to a chronic pain specialist. As a result, Lopresti visited Dr. Stephen Smith at Christian Northeast Hospital for a consultation on pain management. At the time of the consult, Lopresti reported taking Aleve three to four tmes a day for back pain. After a physical exam, Dr. Smith assessed Lopresti with low back pain with radicular symptoms which he thought was most likely a result of degenerative disc disease with a possible annular tear. Dr. Smith's plan for pain management was a series of epidural steroid and trigger point injections. If the injections were unsuccessful, Dr. Smith recommended a discogram to determine if Lopresti was having discogenic pain. In the case of a positive discogram, Dr. Smith considered Lopresti to be a candidate for low back surgery or interdiscal electrothermal therapy.

Lopresti underwent a series of three epidural steroid and trigger point injections in December of 2000. After two of the injections Lopresti reported a 25 to 30 percent decrease in overall pain. On January 8, 2001, Dr. Smith performed the lumbar discogram on Lopresti. He found a 90 percent reproduction of pain including mild radicular symptoms and concordant pain at the L5-S1 disc. The

procedure was repeated twice with the same results. Under fluoroscopy, the L5-S1 disc showed minimal disc abnormality.

On January 29, 2001, Lopresti was evaluated by a neurosurgeon, Dr. Daniel Scodary, concerning his ongoing lower back pain. The neurological exam was normal with negative straight leg raising. Dr. Scodary described Lopresti's previous discogram as positive with 90 percent reproduction of his pain at L5-S1. The neurologist recommended Lopresti have an MRI to evaluate for a possible ruptured disk. He opined that the diagnosis at this time was between herniated disk and degenerative disc disease.

The file contains a single-paged medical record from Dr. Thomas Charles, dated February 15, 2001, who reported Lopresti's history as lumbar disc disease with a plan to have back surgery to replace his lumbar spine. There is no indication in the report who diagnosed the disc disease or who recommended the lumbar fusion. As future medical reports indicate, Lopresti never had the surgery.

Lopresti followed up with Dr. Greco on February 16, 2001. At this visit, Lopresti informed the doctor that he had been advised by a neurosurgeon to have back surgery. Dr. Greco referred Lopresti to Dr. Polinsky for a second opinion.

Neurosurgeon Dr. Michael Polinsky examined Lopresti in March of 2001 to provide a second opinion on Lopresti's back pain and lower extremity symptoms.

8

Lopresti described the pain as predominantly in the low back with some radiation into the posterior thigh on the left side. He said the pain is constant and that neither physical therapy nor epidural steroid injections have provided any relief. Lopresti informed the doctor of a past discogram and a recommendation that he have spinal fusion surgery. Based on the physical exam of Lopresti's upper and lower extremities, Dr. Polinsky noted no tenderness or joint swelling, a good range of motion, and that the joints appeared stable. The muscular structure of the extremities showed no loss of functional strength. Dr. Polinsky found Lopresti's gait and station steady with no limping and no obvious anatomical asymmetry. As for Lopresti's back, Dr. Polinsky found some tenderness in the region of the superior left sacroiliac joint. He also noted that Lopresti's lumbar range of motion was slightly limited in all directions and that a straight-leg test produced left low back pain. Dr. Polinsky reviewed Lopresti's previous MRI of his lumbosacral spine and found it essentially normal with a very slight desiccation of the L5-S1 disc. But he found no nerve root impingement and no spinal canal stenosis. Overall, Dr. Polinsky opined that Lopresti's low back pain may be related to sacroilitis or a facet type syndrome but he concluded that Lopresti was neurologically intact and that no surgically correctable etiology exists for his pain.

In February of 2002 Lopresti received an orthopaedic evaluation from Dr.

Stanley London.  His chief complaint was pain in his back which sometimes radiated into his left leg.  He described the back pain as constant and the radicular pain as intermittent.  Lopresti told the doctor that he had an MRI and discogram, both negative, but that surgery had been recommended for 5/1 disc.  He reported having worn a back brace for about a year, and at the time of this visit he did not use a cane or crutches.  He also told Dr. London that he had been hospitalized in the past for a concussion.  Dr. London noted that Lopresti walked slowly and that he could not hop or squat.  Lopresti had limited flexibility about his back movement and the midline of his back was tender to the touch.  Dr. London's impression from the visit was back pain, negative MRI and discogram but clinically 5/1 disc.

In June of 2004 Lopresti was evaluated by a clinical psychologist after a referral from vocational rehabilitation.  The psychologist found that Lopresti was severely dyslexic but that he showed no signs of clinical depression.  He was diagnosed with an adjustment disorder with mixed emotional features of anxiety, anger and depressed mood.

Also in June of 2004, Lopresti was examined by an internist, Dr. Raymond Leung.  Lopresti complained of back pain, headaches and hypoglycemia.  Dr. Leung conducted a physical exam and reviewed other records including a previous

disability exam from February 2002, a discogram from January 2001, and various progress notes. At the time of this visit, Lopresti was using with a cane which he said that his grandmother gave him for walking. Dr. Leung concluded that Lopresti had mild scoliosis with the convexity on the right. This was indicated by limited forward flexion of the lumbar spine and slow gait without the cane. Lopresti said he had never worn a brace or had surgery for scoliosis. When asked about physical therapy, Lopresti stated both that it did not help in the past and that when he got laid off in the winter he would go for physical therapy to get his back going again. Lopresti described his headaches as one or more per month lasting up to 8 days, and his hypoglycemia as causing a past experience of loss of consciousness but never resulting in hospitalization. Dr. Leung opined that the 2001 discogram showed minimal disc abnormality at L5-S1.

Lopresti sought treatment in September and October of 2004 from the neurology department at Saint Louis ConnectCare for back, leg, and hip pain. The treating physician reviewed his spinal MRI from 2001 and diagnosed minimal degenerative disk disease at L5/S1. He recommended ruling out radiculopathy with an electromyography (EMG),[3] even though he felt it was unlikely. If the test

_____

[3] An electromyography uses an instrument that converts the electrical activity associated with functioning skeletal muscle into a visual record or into sound and is used to diagnose neuromuscular disorders and in biofeedback training. See

was indeed negative, he opined that Lopresti should be referred to a pain clinic, rehab, or back to his primary care physician for pain control.

Lopresti was referred to the Washington University School of Medicine - Neurology, EMG Lab in December of 2004 for a nerve conduction study. They found a few polyphasic MUPs in the left tibialis anterior and medial gastrocnemius muscles, and a few long duration MUPs in the left medial gastrocnemius muscle. All other results were normal. The electomyographer said the findings were non-specific but could be compatible with chronic left S1 +/- L5 radiculopathy. Clinical and if indicated, radiographic correlation was recommended.

The record also contains Lopresti's prescription profile from Walgreens Pharmacy for prescriptions he received from approximately August 2004 to mid January 2005. According to these documents, Lopresti filled prescriptions for Oxycodone and Imipramine about once a month for this 6 month period. He had a few other prescriptions in this time period for other painkillers. In various medical records Lopresti explains the Oxycodone for back pain and the Imipramine for headaches.

---

http://www.meriamwebster.com/dictionary/electromyography.

During the hearing Lopresti mentioned that he had been receiving counseling from Thomas Lemp, MSW, LSCW at Catholic Family Services. At the hearing the only medical record on file from Lemp was a physician's assessment stating his opinion that Lopresti's ability to manage full-time work was poor. The ALJ left the record open for additional medical records. In February 2005 the record was supplemented by Lopresti's attorney. The supplemental records are dated from July of 2004 to January of 2005. The notes from Lopresti's initial session with Lemp indicate that Lopresti was referred for "substance abuse (alcohol, drugs, pain med)" treatment. For current medications, Lemp wrote "numerous for pain ... some legal, some illegal." In general, the documents are very hard to read but they do make references to substance abuse, anger, temper, anxiety, stress, depression and pain problems.

On his application for benefits Lopresti listed the Westport Pain Relief Center as a past medical provider. Lopresti told his Social Security counselor that he had been to the Center four times, that a doctor there repeatedly took X-rays, and that the doctor told him that his "discs were completely gone and there wasn't much they could do except surgery." However, when copies of Lopresti's records were requested from the Center, they indicated that Lopresti had never been treated by any of the doctors there. Their only contact with him was when he

came in for a free massage in 2002.

A physical residual functional capacity assessment of Lopresti was performed by a state agency consultant on June 16, 2004. The state consultant found that Lopresti can occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk for 6 hours of an 8-hour workday, sit for 6 hours of an 8-hour workday, and unlimited pushing and pulling. In terms of postural limitations, Lopresti must frequently limit climbing (ramp/stairs), balancing, kneeling, and crawling. He should occasionally limit climbing (ladder/rope/scaffolds), stooping, and crouching. Lopresti should avoid concentrated exposure to vibration. Overall, the state consultant found Lopresti partially credible but she also found that the severity or duration of the symptoms he alleged were disproportionate to the expected severity or duration on the basis of his medically determinable impairments. She opined that he has the RFC for medium work with non-exertional restrictions and that he could return to his past work as an aircraft assembler or sheet metal worker.

Upon appeal to the Social Security Administration Appeals Council, no new evidence was added to the record. However, after filing this case in district court Lopresti submitted additional medical records. These records will be discussed in detail later.

## Legal Standard

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)).

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment

which significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform her past relevant work. If the claimant can perform his past relevant work, she is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy. If not, the Commissioner declares the claimant disabled. § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. See

e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990). In considering the

subjective complaints, the ALJ is required to consider the factors set out by

Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

Id. at 1322.

A treating physician's opinion should not ordinarily be disregarded and is

entitled to substantial weight. Singh, 222 F.3d at 451. A treating physician's

opinion concerning a claimant's impairment will be granted controlling weight, if

the opinion is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in

the record. Id. While a treating physician's opinion is usually entitled to great

weight, the Eighth Circuit has cautioned that an opinion "do[es] not automatically

control, since the record must be evaluated as a whole." Prosch v. Apfel, 201 F.3d

at 1013.

The Eighth Circuit has upheld an ALJ's decision to discount or disregard

the opinion of a treating physician in situations in which other medical

18

assessments "'are supported by better or more thorough medical evidence'" or in which a treating physician gives inconsistent opinions that undermine the credibility of the opinions. Id. (quoting Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997)). In any event, whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations require the ALJ to "always give good reasons" for the particular weight the ALJ chooses to give the opinion. Singh, 222 F.3d at 452; Prosch, 201 F.3d at 1013; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

## The ALJ's Findings

After considering the entire record the ALJ found that Lopresti was not disabled and made the following findings:

1.  The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  The claimant's degenerative disc disease and polysubstance abuse are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4.  These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.     The claimant has the following residual functional capacity to perform a significant range of medium work; can lift and carry 50 pounds occasionally and 25 frequently; stand and walk about six hours out of an eight hour day; sit six hours out of an eight hour day; and can balance, stoop, and crouch occasionally.

7.     The claimant's past relevant work as a sheet metal worker and aircraft assembler did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8.     The claimant's medically determinable impairments do not prevent the claimant from performing his past relevant work.

9.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

## Discussion

On appeal, Lopresti alleges that he was denied social security benefits without review of his complete medical records.  In response to a show cause order from the Court, Lopresti stated that his attorney (who is no longer representing him) was not able to represent him at his ALJ hearing, so instead he was represented by his attorney's assistant who failed to present all the evidence in support of his disability claim.  He also complained that the ALJ did not allow the

assistant's aide to be present at the hearing and therefore additional information in her possession was not presented in his support.  Lopresti informed the Court that he had additional medical statements and that he is still unable to work and is on constant medication for pain.

Instead of a brief in support of his complaint, Lopresti filed under seal the additional medical documentation that he claims indicates that he is not capable of finding or performing any type of work.  A few of the records in the supplemental filing were duplicates of ones already in the record, including records from Dr. Smith, Thomas Lemp, and Saint Louis ConnectCare.  The new records are from Dr. John Lautenschlager and various personnel from a Saint Louis County Department of Health Clinic for treatment from August 2004 to June 2006.  On January 20, 2006, Dr. Lautenschlager opined that Lopresti was unable to work in any ordinary job because of his back condition, which does not allow him to either sit or stand in one position for more than a few minutes at a time.  Also included in the filing are new records from the Washington University Pain Management Center for chronic low back pain treatment, based on a referral from Dr. Lautenschlager.

The Social Security Act generally precludes a reviewing court from considering evidence outside the record that was before the Secretary.  42 U.S.C. §

405(g); <u>Jones v. Callahan</u>, 122 F.3d 1148, 1154 (8th Cir. 1997); <u>Delrosa v.</u>

<u>Sullivan</u>, 922 F.2d 480, 483 (8th Cir. 1991).  However, a court may remand to the

Secretary for consideration of new evidence "upon a showing that there is new

evidence which is material and that there is good cause for the failure to

incorporate such evidence into the record in a prior proceeding."  42 U.S.C. §

405(g).  "To be material, new evidence must be non-cumulative, relevant, and

probative of the claimant's condition for the time period for which benefits were

denied, and there must be a reasonable likelihood that it would have changed the

Secretary's determination."  <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1215 (8th Cir. 1993).

The supplemental evidence submitted by Lopresti falls into three categories:

evidence that is already in the record; evidence that is not already in the record but

existed prior to the ALJ's decision; and evidence that is not already in the record

and that did not exist until after the decision from the administrative hearing.  <u>See</u>

<u>Thomas v. Sullivan</u>, 928 F.2d 255, 260 (8th Cir. 1991).  Obviously the evidence

that is already in the record is cumulative and therefore immaterial.  Remand will

not be granted to consider evidence that is not new.  The issue before the court is

whether remand for consideration of the evidence not already in the record is

required under the Social Security Act.

The new-to-the-record evidence that existed before the ALJ issued his

decision consists of notes from approximately 11 visits to Dr. Lautenschlager that occurred between August 3, 2004, and June 17, 2005. The only reason proffered by Lopresti for why this evidence was not submitted to the ALJ is that Lopresti was represented by his attorney's assistant at the hearing and the assistant did not provide the ALJ with all of the medical evidence. Also the assistant's aide, who had additional medical evidence, was not allowed to attend the hearing. I am not persuaded that Lopresti had good cause for failing to incorporate this evidence into the record at a prior stage in his disability benefits appeal process. The transcript from the hearing indicates that Lopresti was represented by his attorney, Gloria Morris, at the hearing. This is the same attorney who Lopresti named as his appointed representative according to the documents he filed with the Social Security Administration dated August 2004. Even if his attorney had not been present on his behalf, the ALJ left the record open after the hearing for the collection of additional medical records. If Lopresti's attorney's assistant or assistant's aide had additional medical records, there is no reason why they would not have submitted them to the ALJ after the hearing. Therefore, as for the medical records dated before the decision of the ALJ, Lopresti has not shown good cause for failing to submit them earlier.

Finally, since the new evidence that post-dates the decision of the ALJ was

not in existence at the time of the ALJ's ruling, there is sufficient good cause to excuse Lopresti's failure to include that evidence in the record.  Thomas, 928 F.2d at 260.  However, the majority of the records from Dr. Lautenschlager for this time period do not even concern Lopresti's allegations of disability due to degenerative disc disease and bad hips.  For example, in Lopresti's visit on February 2, 2006, he complained of numbness in his right arm and hand, a stomach virus, and pain in his right knee.  The doctor's notes from February 10, 2006, refer Lopresti to Berland Radiology for a GI study regarding his complaints of abdominal pain.  In June of 2006 Lopresti complained of chest pain on the left side which was evaluated with multiple medical tests.  None of the records regarding arm, abdominal, knee and chest pain allegations are relevant to the disability claim at issue here.  See Woolf, 3 F.3d at 1215 (medical records relating to a condition not mentioned in the present application for benefits have no bearing on the condition for which disability is alleged).

As for the medical records from Dr. Lautenschlager that do relate to Lopresti's low back pain, most of them are simply medication refills or referrals to other physicians.  In July of 2005 Lopresti was evaluated at the Washington University Pain Management Center on a referral from Dr. Lautenschlager.  He was advised by the Pain Center to do physical therapy and to see a clinical

psychologist. Lopresti returned to the Pain Center in May of 2006 for an epidural steroid injection. This medical evidence is cumulative of other evidence already in the record. The ALJ already considered the records of Lopresti's steroid injections from Dr. Smith in December of 2000. The only non-cumulative record is a letter dated January 20, 2006, signed by Dr. Lautenschlager, stating his opinion that Lopresti is unable to work. However, this letter relates to the present time, it does not relate back to the date of the ALJ decision or a period prior to that. To be material, the medical evidence must relate to the claimant's condition on or before June 21, 2005, the date of the ALJ decision. See Thomas, 928 F.2d at 260. Dr. Lautenschlager fails to specify when he thinks Lopresti became disabled. Medical evidence regarding a time period after the decision of the ALJ would be grounds for a new disability petition, not a reason to remand this case to the Commissioner. Id.

Not only is it not clear what time frame Dr. Lautenschlager is referring to when he opines that Lopresti is disabled, I do not believe that his opinion is reasonably likely to change the decision of the Commissioner. Dr. Lautenschlager's opinion is based on Lopresti's statements describing his pain and condition - not on any additional objective medical tests or evaluations. Dr. Lautenschlager's notes refer to getting MRI results and the Pain Center

recommended that Lopresti have a more recent MRI to evaluate his current condition, however, nothing in the medical evidence seems to suggest that additional tests were ever performed.  See Singh, 222 F.3d at 451 (controlling weight given to a treating physician's opinion if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record).  I find no reason to submit this additional medical evidence to the ALJ because there is not a reasonable likelihood that it would change his determination of no disability.  See Woolf, 3. F.3d at 1215; Riley v. Shalala, 18 F.3d 619, 623 (8th Cir. 1994).

The supplemental medical evidence filed by Lopresti is either immaterial, filed out of time with no good cause shown, or not reasonably likely to change the Commissioner's decision on disability.  Therefore this case will not be remanded to the Commissioner for consideration of additional medical evidence.  I find that the ALJ's determination of no disability is supported by substantial evidence in the record as a whole, and should therefore be upheld.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed.

A separate judgment in accord with this Memorandum and Order is entered

this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 13th day of March, 2007.